Do we have somebody for the government on the phone? Yes, there's Kaczynski-Lorisuk for the United States. Oh, it's still you. It's still me. I'm sorry. No, no, happy to have you. Welcome back. Thank you. Did you change hats? No. I can't be Mr. McClain very well, though, so you'll just have to have me. I think it's Mr. Rhodes who's standing here. Correct, Your Honor. And he's looking confident. That's usual for Mr. Rhodes, Your Honor. I'll try to give you little updates like this. Thank you, sir. Mr. Rhodes. Good morning. I'm John. Let's see if we can make you less confident this morning. I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent Mark Mackenstadt. At its most basic level, this case is controlled by a syllogism. Section 5.1 of the guidelines, comment note one, defines community confinement to include a mental health facility. And what else? It includes halfway houses, drug and alcohol placement. But doesn't it go on and make it, and with its statement, it's talking about a mental health facility where you're out in the community when you're not locked up. Isn't it? Is that what that says? No, Your Honor. No? Okay. It just says community confinement means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility. And then it goes on. With what? And participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours. Precisely. So it's talking about places where you have non-residential hours. Does the state lockup for mental patients have non-residential hours? Your Honor, I'm not familiar with the workings of the Warm Springs State Mental Hospital, particularly back in the early 90s, but presumably you are right given the general understandings of mental health hospitals. But going back to your point, I don't think there's a ---- Can you just pluck that out and not read the rest of it? I mean, obviously, they're talking about community-based facilities where the guy is there part of the time and he's out part of the time, right? I disagree, Your Honor. I don't think that we're just plucking that out. These are listed to mean that community confinement includes these various placements, including a mental health facility, but also including a facility where you're permitted to go to educational programs outside the premises of the facility, to go to vocational training programs, to go to work. I thought if somebody said, I define A to be X and Y, somebody couldn't say, oh, well, I meet X and therefore it's an A. There's some kind of logical thing about that if, you know, I can put it more symbolically, I expect. But this says community confinement means A plus B. Well, under that ---- I'm sorry, Your Honor. B. Under that reasoning, Your Honor, in order to qualify as community confinement, the placement would have to be a community treatment center and a halfway house and a restitution center and a mental health facility and an alcohol or drug rehabilitation center. Or there, but there's a semicolon after that phrase. Yes. And then the word and appears, suggesting the two phrases are meant to be separated. You know, and that would just be an illogical reading that, for instance, an alcohol or drug rehabilitation center, certainly we're aware of inpatient treatment, 28-day programs. In Montana, there's a 28-day state-funded program in Butte where it is inpatient. In other words, you are not permitted to leave during those 28 days. Right. If you're locked down, that doesn't seem to meet this either. Our position is it does. What I'm speaking of in this situation is an alcohol or drug rehabilitation center. I really understand your position, and I'm rather sympathetic to the notion that a mental hospital is not the same as a state prison. But what I'm trying to understand better is I understand what you're saying, but I want you to tell me logically why one can say, well, he's in a community confinement facility because he's in a mental health hospital. By reference to this definition, you might refer to something else, but this definition says mental health hospital plus you're doing gainful employment, blah, blah, blah, blah, blah. So I'm just trying to understand how you skip over that besides just blinking. There might be a way, and that's what I'm asking. Well, Your Honor, as I said, I don't believe an alcohol or drug rehabilitation center, which is something I'm very familiar with because my clients are at the program in Butte all the time. I know they're not released for any purpose. It's inpatient for 28 days. I think that would clearly meet this definition of community confinement. Moreover, going to this court's decision in Latimer, which was going to be the second step of the syllogism that Latimer had for criminal history. Is your position that any time you have such a facility, it doesn't count as incarceration? I mean, let's say somebody is in prison and commits or attempts suicide. And he's examined by doctors, and the doctors find that he's schizophrenic or depressive, and they say he needs some time under medical care. And I don't know what the facility is. Are you from Missoula, Montana? I don't know what the facilities are in Montana, but if this were California, they would take him to a Tascadero, which is a facility to deal with mentally deranged. It's a prison, but it's a prison that is a hospital. And, you know, that's probably where they would take him. They might take him to Vakaville. But there are prisons where prisoners are taken to begin specific kinds of medical care, particularly mental care. And the problem I have with your definition is that even if somebody is in the middle of a sentence, as soon as he walks through the portals of this thing that is a mental health facility, even though there are bars on the door, even though there's no difference in the confinement, the degree of freedom you have, because it is called a mental health facility, it gets excluded. And I think that's what your implications are, what you're saying. They're not, Your Honor, and here's why. We have a distinct situation here. Deal with my case. I'll put a little argument to my case. The guy's in prison for 20 years. He does something that requires him to be taken out of the general prison population and be taken to a specific other prison that is just as much a prison as the first one, but it is termed a hospital for the criminally insane. And he's taken there for the sole purpose of giving him treatment. Your Honor, our situation is distinct. We're saying the sentence was to the hospital, and I will get to you. I understand you think your situation is distinct. What I don't understand is how your argument doesn't apply to my situation. It does not because the sentence imposed in your situation was a sentence of imprisonment, which then the prison authorities deemed would be best served at some sort of hospital. That was a decision by the prison authorities, not by the court. Isn't that what halfway houses are? If the BOP, I'm sure everyone's aware of the BOP litigation now, and the BOP can take a sentence of imprisonment and decide that the best place to put that person within the BOP's discretionary authority is a halfway house. And then that's excluded then from this. That's not community confinement anymore, you would say? No, Your Honor, because the sentence in that case. What I distinguished from Judge Kaczynski's is where they decide the best place to put him is in a mental hospital. It's not distinguished because the sentence imposed by the court would be, for instance, 12-month BOP custody. In that situation, we would have to concede that that is a sentence of imprisonment. The Schomburg case cited in the briefs is a good example of that. There, the court imposed incarceration, and the jail decided the best way to implement that sentence was to have the person do a time on the weekends. And so that person said that wasn't a sentence of incarceration, this was a work release program, and the court said no, you go back to the original sentence imposed. The original sentence imposed was incarceration, and that's what we look at. We don't look at how it's executed or implemented, which gets to the two points that were just raised with respect to halfway house or hospitalization. You look at the sentence imposed. I've got one minute left, so I'd like to reserve that for rebuttal. Thank you. Thank you, Your Honor. Laurie Sook for the United States again. If we go following up with Mr. O's final comment about what governs is what happened at the outset or when the sentence was imposed, we need to look at what then State Judge, Judge Erickson, said in his judgment. And he sentenced Mr. Mackenstatt, he sentenced him to the Department of Institution, and then a placement would be in the mental health facility there. This in no way is akin to a community confinement situation mental health facility, which is governed, and as we've talked about in United States Sentencing Guideline 5F, 1.1. This is much more akin, as Judge Erickson described his sentence when questioned by the pre-sentence report writer, as a custodial sentence with a treatment component. The Latimer case just doesn't help Mr. Mackenstatt. In fact, as the government's pointed out, it really highlights why what happened with Mr. Mackenstatt in this situation is not a community confinement but imprisonment. Mr. Latimer was, his sentence was a community-type sentence. He was not in a continuous confinement. In that case, Latimer, they talk about the Vanderlaan case as well and make this point. The difference between the community treatment center and imprisonment is whether there's continuous confinement. Do we know anything about the hospital here? We do know from the judgment, Your Honor, that the only way that Mr. Mackenstatt could be released early from his two years that he was sentenced there was if there was a recommendation to Judge Erickson and then the court changed the judgment. Yes, I mean, that's if he wants to be released. Right. If he... He had to stay. I'm sorry? He had to stay in that facility for the two years. Is that enough? Do you need bars in the gates and bars on the windows and doors? And do you need guards at the gates or anything like that? Or could it be that could this be simply a hospital where he's on his word and he's on his honor to stay there? And if he leaves, yes, in violation of the judge's order, but he's really not confined. Well, this is a Department of Institution's mental facility, Your Honor. It was... I'm asking you which it has to be. The bars and... If it turns out, does it matter whether there are bars on the windows? No. Those are just trappings of confinement that are tangible. Confinement itself is whether you're free to leave, whether there's a lock on the door or not, whether you can leave the facility. And Mr. Mackenstatt couldn't leave the facility. My view is they could have placed him in a regular hospital right down in downtown Missoula, and they said, you know, son, you're not free to leave here, and if you get out of this bed, you'll surely violate that order of the judge. No. That would be good enough. That certainly wouldn't meet the requirement. Why not?  He'd be under court order not to leave. He might be... If he leaves, he might be guilty of escape. Well... I'm wondering. The facilities that qualify for imprisonment are those that are secure, and there's ways of securing it. I don't know of any community hospitals that are secure facilities. So... Bars on the windows and guards at the doors matter. They are trappings of that, but are not necessary. I don't know what you mean by trappings. Do they matter or do they not matter? They do matter, sir, but without them, there may be a facility that doesn't have bars on the doors. What do we know about this facility? It has a nice name, the kind of name that you'd say, gee, I sent my mother to. It sounds so friendly. The only thing that I know about it, Your Honor, is it is part of the Department of Institutions of the State of Montana. It is part of the prison system in Montana. The Department of Institutions doesn't sound so bad either. It is part of... I'd like to use words like prisons and incarceration and... It is part of the... ...and the pension. Are those off limits? What we know about it is what Judge Erickson told us about it, that this was a custodial sentence with the treatment component. Counsel, can I ask a question? This is Judge Fernandez. Thanks, Judge. From what I hear, you're telling us that the Department of Institutions at that time ran both the state mental hospitals and the penitentiaries. Yes, Your Honor. Is that correct? That's correct. Today, it's the Department of Corrections or something like that? It is, yes. So it's just changed names? It's just changed names. All right, now, if I were insane and needed to be sent to a state mental hospital but had committed no crime, would I have been sent somewhere other than the Montana State Hospital? I don't know that there was any other facility, Your Honor. I believe that that is the only one. For criminals and non-criminals, if I were not a criminal, I would have gone to the Montana State Hospital. Is that correct? I believe so, Your Honor. So how do I know that he's being imprisoned as opposed to being, if he were a civil person, being just sent to the state mental hospital because he's not sane? Well, I think the best evidence in this case is what Judge Erickson told us that he was doing, which is that he was sentencing him to a custodial sentence with a treatment component. And that's how we know that this was a sentence of imprisonment. His order says that the order is he shall be sentenced to the Department of Institutions for placement at the state hospital. Exactly. And he has described that when he was questioned as a custodial sentence with treatment components. In the view of the government, that's the best evidence. How are you distinguishing then if I'm completely insane in Montana and the court sends me to the state mental hospital, I take it that's custodial? It is custodial. So this will turn on what the judge later said when he used the word sentence. So it turns on the word sentence, not on the word custodial, I think he's just said. I think that, yes, I think that his original judgment said sentence to the Department of Institutions, and then he explained that later as a custodial sentence with a treatment component. So it's the word sentence that makes this a non-mental health facility that makes it, in effect, a penitentiary. Is that correct? For purposes of Mr. McInstead being there, yes. Also, there were other factors. He couldn't leave without leave of court. He wasn't free to come and go. He wasn't free to come and go as he pleased? Well, neither of these other people I was talking about. I understand. These are just other things to fuel, though, what Judge Erickson meant, and at the time, in his judgment as well. I don't see why you're adding that other thing when it applies to both non-penitentiary and penitentiary. It seems to me it doesn't add anything. It's just a crossover. Also in the judgment, and I think it's important to note, there was an explanation of his reasons for the sentence given, and what Judge Erickson wrote there in his judgment is to remove Mr. McInstead from society so that he can't victimize other persons during this time. So I think that also fuels, at the time, the understanding of what Judge Erickson wanted to do here. Are there any other questions? I think we're done. Thank you, sir. You have a minute. Quickly, in 1991, the Department of Institutions controlled both the state hospital and the state prison. The judge here didn't say, I'm committing this defendant to the Department of Institutions, you execute the sentence. He was very specific, hospitalization, showing that there's a difference between that and imprisonment. Second, getting back to Judge Fernandez's point about the or in Section 5F1.1 in the note, in Latimer, there is no exploration of the conditions of the community treatment center. My point about what? About the or, that in order to show that hospitalization qualifies as community confinement, my client would have somehow been able to walk off the premises? I don't recall saying anything about an or. I said there was a semicolon. Sorry, and. It was conjunctive. I think conjunctive is and. I misspoke, Your Honor. I misspoke. Sorry about that. Trying to rush in all my points. In Latimer, there was no exploration by the court of the conditions of the community treatment center. And so we'd say the same thing applies here. The fact that the judge didn't give any credit for time served toward the hospitalization, he reserved that in case the suspended sentence was to be revoked, further shows there's a distinction between imprisonment and hospitalization, not only generally, but in this case specifically. Two final points. One is the government keeps trying to talk about what Judge Erickson told the probation officer at the time of sentencing in this case. The court's case law clearly prevents that. I think it does it generally to maintain uniformity. That's why we have the Taylor categorical approach used in all sorts of guideline determinations. Latimer specifically said it's the sentence as pronounced by the court at the outset that determines the later classification under the guidelines. So this post hoc justification characterization shouldn't have any impact. Finally, if this is unclear, then the rule of lenity means that this case should not be scored, this prior conviction should not be scored as imprisonment, but instead the ambiguity and the doubt should go to my client. It should be scored as a hospitalization. And for that reason ---- The lenity has to do with primary conduct. It doesn't have any implication here. Your Honor ---- The idea is that people are out there. If the law is unclear, they might act misunderstanding what the law is. But this has nothing to do with that. He was sentenced to be where he was. The judge sent him. The facility was what it was. It has nothing to do with the rule of lenity. Two responses. One is, Your Honor, it's increased the punishment in this case. So this ---- we don't believe it's ambiguous. But if it is, it's denying this liberty. And second ---- Contrary to what it sounds like, the rule of lenity has little to do with being lenient. The rule of lenity has to do with notice and has to do with primary conduct and what we think the effect has on people who might, if they had known the law, might have misread it. We say, well, the law is unclear, and their primary conduct, conduct outside the criminal justice system, might have been affected by a misreading of the rule, given the reading that's more lenient to them. It has nothing to do with a case like ours. Your Honor, I would just note in response that Latimer invoked the rule of lenity to support its decision. Thank you, Your Honors. Thank you. I'm going to show you.
judges: Kozinski, Fernandez, Clifton